AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED

*April 16, 2021*

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH<br>SNAPCHAT USER ID crazygirljolie<br>THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. | )<br>)<br>)<br>)<br>)<br>)    Case No.   **3:21-mj-100** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Central _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1470, 2251 and 2252A | Transferring Obscene Material to Minors, Sexual Exploitation of Children, Possession of Child Pornography and Distribution of Child Pornography |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DeWayne Lewis, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 4-16-21

*Judge's signature*

City and state: Houston, TX

Andrew M. Edison
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Snapchat account with username crazygirljolie from the date of its creation through to the present that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.      **Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A, from the date of creation through to the present, is within the possession, custody, or control of Snap, Inc., including any messages, records, files, logs, or information that have been deleted but are still available to Snap, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap, Inc. is required to disclose, within 14 days from the date of execution of this warrant, the following information to the government for each account(s) listed in Attachment A:

a.      All past and present Friends, including any deleted or blocked Friends, as well as the Snap/Snapchat ID of each past, present, blocked or deleted Friends' profiles;

b.      All communications or other messages sent or received by the accounts, including "messaging logs" and the content of messages;

c.      All identity and contact information, including full name, email address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

d.      All past and current usernames associated with the account(s);

e.      All activity logs including neoprints and IP logs (and ports, if applicable), including those associated with user posts, and other documents showing the IP address (and port, if applicable), date, and time of each login to the accounts, as well as any other log file information;

f.      All data and information associated with the profile page, including photographs, "stories," "bios," and profile backgrounds and themes;

g.      All user content created, uploaded, or shared by the user;

h.      All photographs, images, gifs or videos associated with the account;

i.      All exchangeable image file format (EXIF) data, camera, and camera settings information for all images associated with the account;

j.      All location data associated with the accounts and any photos or videos associated with the accounts, including geotags;

k.      All data and information that has been deleted by the user;

l.      A list of all of the people that the user followed, liked, or replied to on Snapchat, and all people who followed, liked, or replied to the user;

m.      A list of all users that the accounts have "unfollowed" or blocked;

n.      All privacy and accounts settings;

o.      All records of searches performed by the account, including all past searches saved by the account;

p.      All information about connections between the accounts and third-party websites and applications; and

q.      All records pertaining to communications between Snap/Snapchat and any person regarding the user or the user's Snap/Snapchat account(s), including contacts with support services, and all records of actions taken, including suspensions of the accounts, and any/all email notifications.

Snap, Inc. is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

## II.      Information to be seized by the government

All information described above in Section I from the date of the accounts' creation through to the present, that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1470, 2251, 2252A and 2422(b) involving the user or users of the accounts identified in Attachment A, including, for each user name identified on Attachment A, information pertaining to the following matters:

(a) all correspondence; including Snapchat Snaps, Stories, Memories, Chats, Snapcash transactions, posts, private messages, direct messages, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages;

(b) Messages and chats between the users listed above and other friends or contacts;

(c) Images and videos depicting the users or other minors engaged in sexually explicit conduct;

(d) Drawings, cartoons or paintings depicting minors engaged in sexually explicit conduct and which are obscene;

(e) Evidence indicating how and when the Snap/Snapchat account(s) were accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Snap/Snapchat account(s) owner or user;

(f) Evidence indicating the Snap/Snapchat accounts owner's or user's state of mind as it relates to the crimes under investigation;

(g) The identity of the person(s) who created or used the accounts, including records that help reveal the whereabouts of such person(s); and

(h) The identity of the person(s) who communicated with the accounts' users about matters relating to harassment, threats, stalking, illicit images and/or child pornography, including records that help reveal their whereabouts.

## III.     Method of Delivery

Snap, Inc. shall disclose items seized pursuant to this search warrant within 14 days by sending (notwithstanding Title 18, United States Code, Section 2252A, or similar statute or code) to the listed Special Agent. Snap, Inc. shall disclose responsive data, if any, by delivering via their online law enforcement portal or via emailed encrypted files to dewayne.e.lewis@ice.dhs.gov, or on any digital media storage device via the United States Postal Service or commercial interstate carrier c/o Special Agent DeWayne Lewis, Homeland Security Investigations, 601 Rosenberg Avenue, Suite 201, Galveston, Texas 77550.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT USER ID crazygirljolie THAT IS STORED AT PREMISES CONTROLLED BY SNAP, INC. | Case No. **3:21-mj-100** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, DeWayne Lewis, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a social media service provider, headquartered at 2772 Donald Douglas Loop North, Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, a government-authorized person will review that information to locate the items described in Section II of Attachment B.

2.    I am a Special Agent (SA) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), assigned to the Homeland Security Investigations (HSI) office in Galveston, Texas. I have been so employed since June 2002. As part of my duties as an ICE agent, I investigate criminal violations related to child exploitation and child pornography, including violations pertaining to adults transferring obscene material to minors, online extortion and/or stalking, adults attempting to meet

with juveniles for sexual encounters and the illegal production, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. § 875(d), 1470, 2422(b), 2423, 2251, 2252, 2252A and 2261A(2). I have received training in the area of child pornography and child exploitation, and I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have participated in the execution of numerous search warrants and covert operations involving child exploitation and the online solicitation of minors, many of which involved child exploitation and/or child pornography offenses. I am in routine contact with experts in the field of computers, computer forensics, and Internet investigations. I annually attend the Dallas Crimes Against Children Conference where I attend various investigative training. I am currently a member of the Houston Metro Internet Crimes Against Children Task Force. This task force includes prosecutors and members of multiple police agencies across the southeast/coastal Texas and Houston metro regions.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      As a result of the investigation described more fully below, there is probable cause to believe that evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of federal law, including 18 U.S.C. § 2251 and 2252A have been committed by the person using Snapchat account "crazygirljolie." There is also probable cause to search the information described in Attachment A for evidence, contraband, instrumentalities and/or fruits of these crimes, as described in Attachment B.

5.      This investigation initially involved a suspect who stated he was about to sexually assault his sister and then distributed a video depicting himself as he masturbated in a sleeping minor female's bedroom. The recipient of the messages and video reported them to her school counselor. The counselor reported the incident to the National Center for Missing and Exploited Children.

## SNAP, INC. AND SNAPCHAT

6.      Snap Inc. is an American multinational technology and social media company that was founded in September of 2011, and based in Santa Monica, California. Snap, Inc. products include Snapchat and Spectacles, among others. Snapchat is a mobile application made by Snap Inc. and available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and text. Snapchat's differentiating feature from other communications applications is that a sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

7.      Snapchat users have the following abilities:

a.   Snaps: A user takes a photo or video using their camera phone in real-time and then selects one of their friends to send the message to. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

b.   Stories: A user can add photo or video snaps to their "Story". Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories. Our Stories is a collection of user submitted snaps from different locations and

3

events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

c.   Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

d.   Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

e.   Snapcash: Snapchat also offers a money transfer service called Snapcash. Users are able to transfer up to $2,500 per week using this service. Snapcash transactions are only permitted using Visa and Mastercard debit cards issued by a United States Financial Institution. Money transfers can only occur if the sender and receiver both have Snapchat installed and have linked an appropriate debit card to their accounts. To facilitate these transactions, Snapchat retains information about the method and source of payment including debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers.

8.   Information that Snapchat possesses and maintains includes:

4

a.  Personally Identifying Information: When a user creates an account, they make a unique
    Snapchat username. This is the name visible to other Snapchat users. A user also enters a
    date of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat.
    An email address is required to register a Snapchat account. A new user also has to provide
    a mobile phone number. This phone number is verified during the registration process.
    Snapchat sends an activation code that must be entered before proceeding with the
    registration step. However, a user may elect to bypass entering a phone number so one may
    not always be present in the user's account. Snapchat also retains the account creation date.

b.  Usage Information: While a Snapchat message may disappear, the record of who sent it and
    when still exists. Snapchat records and retains log files and information that is roughly
    analogous to the call detail records maintained by telecommunications companies. This
    includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the
    number of messages exchanged, which users they communicate with the most, message
    status including if and when the message was opened, and whether the receiver used the
    native screen capture function of their device to take a picture of the snap before it
    disappeared.

c.  Device Information: Snapchat stores device information such as the model, operating
    system, operating system version, mobile device phone number, and mobile network
    information of devices used in conjunction with the service. They also collect unique device
    identifiers such as the Media Access Control (MAC) address and the International Mobile
    Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to
    access Snapchat.

5

d. Device Phonebook and Photos: If a user consents, Snapchat can access contact lists and images from their device's electronic phonebook.

e. Financial information: Snapchat retains information about the method and source of payment of customers who use the Snapcash service. This includes debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers. Snapcash generate a receipt for any transaction. The receipts are programmed to automatically delete after the sender and recipient have seen the message and swiped out of the Chat screen, unless either taps to save the message. Snapchat maintains transactional records for ten days. These records include information about the sender and receiver, the transaction amount, and date/time stamps of when the message was sent, received, and opened.

f. Message Content: Snapchat's motto is 'delete is our default.' Snapchat deletes a snap once it has been viewed. If the message is not read, because the user has not opened up the application, the message is stored for 30 days before being deleted. However, just because the snap no longer appear to the user, doesn't necessarily mean they are gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Reply. Also, if a Snapchat user posts an image or video to the My Story feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

6

9.      Therefore, the computers of Snapchat are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and account application.

## STATUTORY AUTHORITY

10.      This investigation concerns alleged violations of:

a)  Title 18, United States Code, Section 2251(a) which states: (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed;

b)  Title 18, United States Code, Section 2252A which states: (a) Any person who –

(2) knowingly receives or distributes - (A) any child pornography using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or (B) any material that contains child pornography using any means or facility of interstate or foreign commerce or

7

that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

(5) (B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer

c)  Title 18, United States Code, Section 2256(8) defines "child pornography" as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where - (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

d)  Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" as actual or simulated - (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the anus, genitals or pubic area of any person.

e)  Title 18, United States Code, Section 1470 which states: whoever, using the mail or any facility or means of interstate or foreign commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so, shall be fined under this title, imprisoned not more than 10 years, or both.

**PROBABLE CAUSE**

11.      The HSI Galveston office received information from the National Center for Missing and

Exploited Children that a potentially exigent situation had been reported regarding a suspect conducting

criminal activity within the Southern District of Texas and the HSI Galveston area of responsibility (AOR).

On April 8, 20201, HSI Galveston Special Agent (SA) DeWayne Lewis made contact with the Leslie Sarno,

a high school counselor at the Dickinson Independent School District. Ms. Sarno reported that a 14-year-

old student (Minor Victim 1) made an outcry on April 7, 2021, that she had received sexually explicit

messages and a video depicting child pornography via her Snapchat account from another Snapchatter with

the screen name, "crazygirljolie." Ms. Sarno collected screen shots of Minor Victim 1's (MV1) messages

from crazygirljolie and provided those to SA Lewis. Portions of the texts included the messages below;

including abbreviations, misspellings and acronyms, in part:

(wtf is the common abbreviation for "what the fuck," bc is the common abbreviation for "because," idk is
the common abbreviation for "I don't know," tf is the common abbreviation for "the fuck," and "bruh"
commonly refers to a male friend or acquaintance.)

**Saturday (April 3, 2021)**
Jolie:   Hey babygirl
MW1:   Wtf 😂

Jolie:   🍑 🍑 🍑
MW1:   bitchh 🤳 i'm straight

Jolie:   Who says I'm a girl
MW1:   you have a girl bitmoji wtf 🤳 🤳 and who's guys name is jolie

Jolie:   It could be a fake account
MW1:   why would you do that

**Sunday (April 4, 2021)**
Jolie:   Bc I like to eat pussy and Ass
          bet I could make you cum in 5 minutes
          Just by eating you out
MW1:   nah 😂 😂

9

Jolie:  You want to know something
MW1:  what

Jolie:  I have a dick
MW1:  LMAOOO WHY IT LOOK LIKE THAT

Jolie:  Idk but I'm about to put it in my sister
MW1:  fuck no bruh wtf hell nah nasty bitch

Jolie:  Hell yea
MW1:  hell no nasty ass

Jolie:  She gonna be so tight
MW1:   bruh wtf wrong with you

Jolie:  A lot
MW1:  nah you have to have a reason

Jolie:  I don't
MW1:  then why you using a picture of a girl that has the same name

Jolie:  Bc it's not my account
MW1:  obviously but why
         someone always has a reason for a fake account

Jolie:  No like it's my friends account
MW1:  so your using your friends account and pictures
         🙄 bruh wtf
         what's your name?

Jolie:  No the pictures are mine I take tho
MW1:   huh??

Jolie:   I took the pictures
MW1:   that don't make sense if you a boy how tf can you take her pictures

Jolie: My name is Jon
MW1: I feel like you lying now

Jolie: What that ass look like
         *(Jolie transmitted a color video of a male's erect penis, see full description below)
MW1: u suck asshole
         imma call the fucking cops
         wtf is wrong with you

10

> leave her fucking alone
> that is a god damn child bro that's not funny

Jolie: Sorry I was to busy fucking her in the ass
MW1: bro your fucking kidding
> leave her fucking alone bro
> wtf is wrong with you

Jolie: Bc I sneak in there rooms a take the pictures
MW1: wtf bro
> but you just said friends

Jolie: I'm using my friends account
MW1: see your story don't add up

Jolie: I took the pictures but I'm on my friends account
MW1: so how you gonna take another girls mirror pic

Jolie: Ok that one was hers
MW1: and how did you get that

Jolie: Bc it was on her account
MW1: why did she even give you her account then

Jolie: She didn't
MW1: then how did you get it?
Jolie: She put it in my phone and I didn't take it out

12.    Ms. Sarno also viewed the video that was transmitted to MV1 from "Jolie." Ms. Sarno provided SA Lewis with a detailed description of the video, which was listed below, in part:

> A color video that depicted a late teen, or young adult, Caucasian male masturbating with his erect penis exposed in the foreground while a Caucasian minor female, who appeared to be approximately 4-6 years old, was asleep on a small daybed in the background. The sleeping minor female appeared to have wavy, brown hair and was resting on her side with the profile of her face and her bare legs exposed.

13.    SA Lewis had a summons served on Snap, Inc. on April 12, 2021, for subscriber and IP log information for the Snapchat customer with username crazygirljolie. Snap responded on the same date with the following information, in part:

11

| ID | email | created | creation ip | phone# | display name |
|---|---|---|---|---|---|
| crazygirljolie | null | Feb 08, 2021 15:10:32 UTC | 2605:6440:1003::413 | null | Jolie😜 |

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH A SEXUAL INTERST IN CHILDREN

14.     Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the sexual exploitation of children which includes the production, distribution, receipt, possession and collection of child pornography:

15.     Individuals with a sexual interest in children receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

16.     Individuals with a sexual interest in children collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals with a sexual interest in children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower, or "groom," the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

17.     Individuals with a sexual interest in children almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home, email account or in "virtual" storage, like in the iCloud, Facebook, or Snapchat. Individuals with a sexual interest in children typically retain pictures, films, photographs, negatives, magazines,

12

correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

18.     "Child erotica," as used in this Affidavit, is defined as materials or items that are sexually arousing to certain individuals but which are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

19.     Likewise, individuals with a sexual interest in children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area or "virtual" storage. These collections are often maintained for several years and are kept close by, or remotely accessible, usually at, or via, the collector's residence, to enable the collector to view his collection, which is highly valued.

20.     Individuals with a sexual interest in children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in sex with children or child pornography.

21.     Individuals with a sexual interest in children prefer not to be without their child pornography, or prohibited from its' access, for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

22.     Individuals with a sexual interest in children often have had, or continue to maintain, multiple email and social media accounts. It is common for such individuals to control multiple email addresses in their attempts to remain anonymous or thwart law enforcement's efforts to investigate their illicit activity. Some individuals will create an account to imply that they are of a different age or sex

depending on what their online intentions are, or to pose as a person a potential victim already knows. Some individuals with a sexual interest in children will open multiple accounts, whether they be for email, social media or remote storage, with common denominators that can be identified by the host company that operates that medium. For example, a person with a sexual interest in children may create and maintain several different email accounts, but use the same email address as a "recovery" or "verifier" email account. Those individuals will use the same technique for new social media, email or virtual storage accounts when their original ones are compromised or shut down.

23.     Individuals with a sexual interest in children often maintain contact information from their trusted sources or like-minded individuals. They also block, cancel or "unfriend," contacts that they perceive pose a threat to their illegal activity or have not maintained good standing. For example, another individual with a sexual interest in children, but preferred children of a different age range or ethnicity, might be blocked by the other. They may also block a person who threatens to contact a parent or the police about their online activity. Likewise, a victim of coercion, enticement and/or sexual exploitation may block a suspect who is attempting to further victimize them.

24.     Based upon my training, knowledge and experience in investigations related to child exploitation and my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography and exploitation, I am aware that individuals who access paid subscription or free sites offering images and/or videos depicting child pornography do so for the purpose of downloading or saving these images to their hard drive or other storage media so that the images and videos can be added to their collection. I know that individuals involved in the distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet such as newsgroups and websites, and via paid subscriptions, as well as their own "trophy photos" of sexual conquests involving the exploitation of children.

25.     Additionally, based upon my training, knowledge and experience in investigations related

to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes have a collection of child pornography and will ask children to take and send naked images of the themselves that would constitute child pornography as well as child erotica.

26.     Furthermore, based upon my training, knowledge and experience in investigations related to child exploitation and child pornography cases, I am aware that individuals who have a sexual interest in children will oftentimes utilize social media such as Instagram, Snapchat, Yahoo! Messenger, KIK Messenger and Craigslist and other online services to meet and communicate with minors. Individuals with a sexual interest in children know that social media allows for seemingly anonymous communication which they can then use to groom the minors and set up meetings in order to sexually exploit them.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

27.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

28.     Based upon my own knowledge, experience and training related to child pornography and child exploitation investigations, I am aware that individuals who have a sexual interest in children entice and solicit children for their nude images and/or sexual encounters. They also possess/distribute child pornography and are often child pornography collectors who have escalated their activity from anonymously obtaining images of child pornography to proactively meeting children for sex and distributing images they have collected, often for the purposes of trading their child pornography images

15

with others as a method of adding to their own vast collections. Furthermore, I know that individuals with a sexual interest in children and who are involved in the collection and distribution of child pornography also continue to obtain images of child pornography found elsewhere on the Internet, such as in newsgroups and other websites, including via paid-subscription sites. Sometimes those "payments" are in the form of new, or bartered, images depicting the sexual exploitation of a child.

29.     Finally, based upon the conduct of individuals who have a sexual interest in children, as set forth in the paragraphs above, that they tend to maintain their collections for long periods of time, even over the course of years, there is probable cause to believe that evidence of the offenses of Sexual Exploitation of Children, Possession and Distribution of Child Pornography as well as the Transfer of Obscene Material to a Minor is currently located on the servers owned/operated by Snap, Inc., 2772 Donald Douglas Loop North, Santa Monica, California 90405. I believe the suspect has demonstrated these offender characteristics based on his creation of an alias persona to contact at least one minor via Snapchat, based on his distribution of a video depicting the male masturbating in his sister's room as she sleeps, based on his explanation that he sneaks into their rooms to take their photos and based on the transfer of the video of his erect penis to a student he knows is a minor.

30.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Snap, Inc., who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

31.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction," as defined by 18 U.S.C. § 2711, 18 U.S.C. § 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated."

16

32.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

DeWayne Lewis
Special Agent
DHS/ICE/Homeland Security Investigations

Subscribed and sworn to before me telephonically on April _____16_____, 2021 and I find probable cause.

The Honorable Andrew M. Edison
UNITED STATES MAGISTRATE JUDGE

17